**The STATE of Ohio, Appellee,**

**v.**

**STEVENS, Appellant.**

[Cite as *State v. Stevens,* 179 Ohio App.3d 97, 2008-Ohio-5775.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19070.

Decided Nov. 3, 2008.

</div>

98

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and R. Lynn Nothstine, Assistant Prosecuting Attorney, for appellee.

Terry L. Lewis, for appellant.

BROGAN, Judge.

{¶ 1} In late 2000, Moses Stevens burst into Bruce Nelson's home and, brandishing a handgun, demanded drugs and money from everyone inside. For his criminal adventure, the jury found him guilty of six felonies and each accompanying firearms specification. For the underlying felonies, the trial court imposed an aggregate five-year sentence. The court also gave him five three-year prison terms for the firearms specifications, mandatorily imposed under R.C. 2929.14(D)(1)(a)(ii). These five terms were ordered to run consecutively to the five-year aggregate sentence and consecutively to each other. Finally, over seven years later, Stevens's appeal of this sentence is being heard. We granted his application to reopen his direct appeal pursuant to App.R. 26(B), based on ineffective assistance of appellate counsel. In doing so, we confined the appealable issue to whether the trial court erred by failing to merge the firearms-specification convictions under R.C. 2929.14(D)(1)(b) because the underlying offenses were part of the same transaction.

{¶ 2} When Stevens burst through the door, he found three people inside—Bruce Nelson, Dustin Byers, and Danny Seiber—each of whom he approached individually. Bruce Nelson gave him $180 in cash, his identification, and some prescription medication that he had been taking since he broke his leg, which was still in a cast. The other two gave him their cigarettes, and Seiber also give him the five-dollar bill that was in his pocket. While Stevens was still inside, Angel Nelson, Bruce's young daughter, came down the stairs, but she quickly escaped out the back door after Stevens trained his gun on her. She ran to Greg Ryan, a neighbor, to tell him what was happening. Ryan went to the Nelsons' house to face the gunman. After Stevens threatened him with the gun, though, he wisely backed out the door. Before Stevens fled, he grabbed Bruce Nelson's cast, swung it up into the air, and then struck him with the butt of his gun. This entire episode lasted approximately ten minutes.

{¶ 3} Despite his claims that he was not the one who robbed the house, a jury found him guilty of two counts of aggravated burglary, three counts of aggravated robbery, and one count of felonious assault.[1] For each count, the jury also found him guilty of the accompanying firearm specification. He was sentenced to a total of 20 years in prison.

{¶ 4} The statute governing felony sentencing appeals permits an appellate court to "take any action * * * if it clearly and convincingly finds * * * [t]hat the

---

1. He was also found guilty of two counts of aggravated menacing, misdemeanors. For unknown reasons, he was not sentenced for them, nor do they appear on the termination entry.

sentence is otherwise contrary to law." R.C. 2953.08(G)(2). After *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, Ohio appellate courts have been unable to agree on the proper standard of review to employ on felony sentencing appeals, because of varying views of the effect that the case had on R.C. 2953.08. Recently, in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Ohio Supreme Court attempted to clarify this issue of the relationship between *Foster* and existing sentencing statutes, including R.C. 2953.08. In applying *Foster*, *Kalish* instructs appellate courts to engage in a two-step review of felony sentences. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If this step is satisfied, the second step requires that the trial court's decision be "reviewed under an abuse-of-discretion standard." Id. Importantly, then, after *Foster*, the clear and convincing standard codified in R.C. 2953.08(G)(2) is retained to the extent that "an appellate court remains precluded from using an abuse-of-discretion standard of review when initially reviewing a defendant's sentence." Id. at ¶ 14.

{¶ 5} If a defendant is convicted of a R.C. 2941.145 firearms specification, R.C. 2929.14(D)(1)(a)(ii) requires the sentencing court to impose a three-year mandatory prison term. But the court is not permitted to impose more than one such term for multiple firearms specification convictions, if the underlying felonies were "committed as part of the same act or transaction." R.C. 2929.14(D)(1)(b).[2] The Ohio Supreme Court defined "transaction" as " ' "a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." ' " *State v. Wills* (1994), 69 Ohio St.3d 690, 691, 635 N.E.2d 370. The appropriate test, then, is "whether the defendant 'had a common purpose in committing multiple crimes' and engaged in a 'single criminal adventure.' " *State v. Like*, Montgomery App. No. 21991, 2008-Ohio-1873, 2008 WL 1759080, at ¶ 40, quoting *State v. Adams*, Mahoning App. No. 00CA211, 2006-Ohio-1761, 2006 WL 890971, ¶ 54–57. The focus of the inquiry is "on the defendant's overall criminal objectives." *State v. Moore*, 161 Ohio App.3d 778, 2005-Ohio-3311, 832 N.E.2d 85, at ¶ 45. This is a highly fact-specific inquiry. Id. at ¶ 46. And the mere coincidental proximity of victims is not enough to create a single transaction. See *Wills*, 69 Ohio St.3d at 691, 635 N.E.2d 370.

{¶ 6} The critical pieces of evidence here are these: Stevens, unknown to any of his victims, burst into the home and pulled out a gun; he demanded drugs and money from everyone inside; then he approached three people, one after the

---

2. We note that we review this appeal using the version of R.C. 2929.14 that was in effect in 2001, when he was sentenced.

other, to demand everything each had. Stevens's primary defense at trial was that he was not the one who committed these crimes. Even later at his sentencing hearing, Stevens continued to maintain his innocence. Thus, there is no evidence here that the criminal objective of entering the home was to rob any particular victim.

{¶ 7} The state's principal argument in this case is that different victims indicate distinct objectives. The state contends that "[s]ome appellate courts have held that when there are two different victims, then there are two different objectives." *State v. Herring,* Jefferson App. No. 00JE37, 2002-Ohio-2786, 2002 WL 33958156. Undoubtedly, sometimes multiple proximate victims do indicate a defendant with distinct criminal objectives. But this is not necessarily so; the evidence must support such a conclusion. See *State v. Moore,* 161 Ohio App.3d 778, 2005-Ohio-3311, 832 N.E.2d 85.

{¶ 8} Despite the multiple victims here, this case is analogous to those cases in which the evidence revealed a defendant with a single objective. In each of those cases, the firearms-specification convictions were merged under R.C. 2929.14(D)(1)(b). For example, in *State v. Hughley* (1984), 20 Ohio App.3d 77, 20 OBR 97, 484 N.E.2d 758, the defendant walked into a bar brandishing a gun and robbed the bartender and most customers. Without analysis, the court found that his offenses were part of one criminal objective. Similarly, in *Moore,* the defendant ran up to a car as it pulled into a driveway. Upon reaching the car, he shoved a gun in the driver's face and demanded money from both the driver and the passengers. The court rejected the state's argument that he had separate objectives—first to rob the driver, then to rob the passengers. Instead, while acknowledging that separate victims could indicate separate objectives, the court found that the evidence in the case did not support such a conclusion. Rather, the evidence pointed to a single criminal objective of robbing all the passengers. Finally, in *State v. Marshall,* Cuyahoga App. No. 87334, 2006-Ohio-6271, 2006 WL 3446196, the defendant robbed a store clerk and several customers. All the offenses were part of the same transaction, said the court, because "[t]hey were a series of continuous acts bound together by time, space and purpose, and directed toward a single objective—to rob the store." Id. at ¶ 32.

{¶ 9} Conversely, the cases with multiple victims in which the court found distinct criminal objectives contained evidence that the defendants had targeted those specific victims individually. Consequently, these courts properly refused to merge the firearms-specification convictions. A few cases will suffice to illustrate that these cases are distinguishable from the first group of cases and from the instant case. In *State v. Hughes* (Jan. 21, 1999), Cuyahoga App. No. 73279, 1999 WL 35349, the defendant was convicted of murdering one police officer and attempting to murder a second during a shootout. The court said that

there was no error in finding two separate objectives to kill two different men. Id. at *7. Similarly, the court in *Herring* refused to merge the firearms specifications on two kidnapping and two aggravated-murder convictions because it found that each of these four crimes involved a distinct objective that concerned a specific individual. Finally, the defendant in *State v. Gary* (Feb. 14, 2002), Cuyahoga App. No. 79224, 2002 WL 232875, a case from this court, raped two women at gunpoint within moments of each other. We found that the rapes of the two victims were not part of the same transaction because the defendant had distinct objectives of raping each victim.

{¶ 10} The defendants in these cases had criminal objectives that focused on specific victims: raping this victim; murdering that victim; kidnapping that other victim. In contrast, the defendants in the former group of cases had criminal objectives that were not focused on any particular victim but were more abstract. Their objective was to rob this bar or that car, regardless of who was inside. While the pursuit of their objectives resulted in multiple victims, their objectives would have been met even if there had been only one patron in the bar or no passengers in the car. The same cannot be said about the objectives of the defendants in the latter group of cases. For instance, had the defendant in Gary not raped these particular two women, he would have been frustrated in trying to reach his criminal objective. Here, the evidence does not reveal that Stevens had any particular victim in mind. Rather, it appears that he embarked on a "criminal adventure" to rob whomever was in Bruce Nelson's home.

{¶ 11} Therefore, we find that the appealed portion of Stevens's sentence is clearly and convincingly contrary to law. We think that the trial court should have merged his firearms-specification convictions, as R.C. 2929.14(D)(1)(b) requires, and imposed only one three-year prison term. Because this portion of the sentence was statutorily imposed, we find it expedient to modify his sentence with the ability granted us by R.C. 2953.08(G)(2) rather than remand to the trial court for resentencing. Accordingly, we modify that portion of Stevens's sentence imposed for the firearms-specification convictions by merging these convictions into a single three-year term. Consequently, his total sentence is eight years. Stevens brings to our attention that he has been in continuous custody since his arrest on October 19, 2000. This means that he has now spent over eight years in prison. He is entitled to have his sentence credited with the correct number of days that he spent in custody before his sentence began. R.C. 2967.191; *State v. Sheffield*, Montgomery App. No. 20029, 2004-Ohio-3099, 2004 WL 1351161.

{¶ 12} If Stevens is right that he finished serving his eight-year sentence on October 18, 2008, it is critical that he be released without undue delay.

{¶ 13} Stevens's sole assignment of error in this appeal is sustained, and his sentence is modified consistent with this opinion. The judgment of the trial court is reversed in part and affirmed as modified.

Judgment accordingly.

FAIN and GRADY, JJ., concur.